

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-2-2004

# USA v. Pringle

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1782

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Pringle" (2004). *2004 Decisions.* Paper 1034.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1034

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-1782

UNITED STATES OF AMERICA

v.

TYRONE PRINGLE
a/k/a DIGGUMS

Tyrone Pringle,
Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. Action No. 01-cr-00049)
District Judge:  Honorable James T. Giles

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 27, 2004

BEFORE:  NYGAARD, FUENTES and STAPLETON, <u>Circuit Judges</u>

(Opinion Filed February 2, 2004)

OPINION OF THE COURT

STAPLETON, <u>Circuit Judge</u>:

Tyrone Pringle was indicted for possession of a firearm by a convicted felon, in violation of 28 U.S.C. § 922(g)(1). He entered a conditional guilty plea, preserving his right to raise on appeal the denial of his motion to suppress evidence. Pringle was sentenced to a term of imprisonment of 46 months, followed by 3 years of supervised release, a $1,000 fine, and a special assessment of $100.

Narcotics officers, executing a search warrant on a residence, spotted Pringle sitting in a car outside the residence. Although Pringle was not the target of the search or associated with the premises, the police ordered him out of the car for a pat-down search and found a gun in his waistband. The issue on appeal is whether the police had reasonable suspicion for the pat-down search as required by *Terry v. Ohio*, 392 U.S. 1 (1968).

I.

Defense counsel accurately summarizes the evidence at the suppression hearing and the District Court's findings in the following manner.

On June 22, 2000, at about 8:00 a.m., Sergeant Adam Sendek of the Chester Police Department narcotics unit was driving around the city of Chester, Pennsylvania, with a confidential informant who was pointing out locations in the city where drug dealing and other criminal activity was taking place. Sendek had worked with the informant for about five years, and during that time period this informant had given

2

information leading to seizure of contraband, arrest and conviction on five or six occasions. As they drove by the area of Seventh and Lloyd Streets, the informant brought up Pringle's name, which Sendek already knew. The informant said that he had seen Pringle at about 2:00 a.m. or 3:00 a.m. that same morning carrying a big automatic pistol at Seventh and Lloyd Streets. The informant also said Pringle carried the gun "24/7," meaning that he kept the gun on him all the time. (App. at 40a.) The informant did not explain, however, how he knew Pringle carried the gun all the time, or how frequently he had seen him with a gun. He also did not specify where Pringle carried the gun. Sendek passed the information about Pringle on to Officer David Tyler.

Later that same day, Tyler received unrelated information from another source about drug dealing by an individual living in the second floor rear apartment at 3010 West Ninth Street in Chester. Based on this information, Tyler obtained a search warrant for that apartment. Pringle was not a target of this investigation.

At 8:48 p.m. that evening, Tyler, Sendek, and about eight other officers went to 3010 West Ninth Street to execute the warrant. Tyler and Sendek arrived in a van driven by Sendek, and they approached the residence from the back alley because the entrance to the second floor apartment was in the rear. As Tyler got out of the van, he saw to his left that there was a car parked on the property with a person in the driver's seat. Tyler shined his flashlight at the car and saw Pringle inside. Tyler testified that as he shined his light on Pringle, "his eyes widened like he was really surprised to see me."

(App. at 27a.) Tyler went up to the car and knocked on the window, indicating that Pringle should roll it down. Pringle complied. Tyler asked Pringle if he had a gun on him. Pringle hesitated about five seconds and the said, "No." (App. at 27a.) Tyler ordered Pringle out of the car so as to conduct a pat-down search. As Pringle was getting out of the car, Tyler started to conduct the pat-down search, placing his hands on Pringle. Sendek at this moment was approaching the car, and Pringle blurted out, "Sendek, I got a gun in my left waist." (App. at 28a.) Sendek pulled the gun out of Pringle's waistband and Tyler placed him under arrest. Tyler testified that his decision to conduct the search was based on the information from the informant that Pringle was carrying a gun, plus the facts that Pringle's eyes "widened" when he shined the light on him and that he hesitated when asked if he had a gun.

The District Court denied the motion to suppress, ruling that the informant's tip that Pringle was carrying a gun was not old or stale information and that the informant was reliable. The court also found that the officer's suspicions were heightened by Pringle's reaction of widening his eyes when the light was shined on him, and his hesitation before saying he did not have a gun. The court further found that the officers "had a right to pat down anyone for whom they had that kind of information from a confidential informant or from some other source that the person might be armed to pat the person down for their own safety in the execution of the warrant." (App. at 62a.) Lastly, the court found the gun was actually found as a result of Pringle's statement that

4

he had a gun, made during Pringle's detention.

## II.

We agree with the District Court. The information possessed by the officers at the time of the pat-down search clearly constituted "reasonable suspicion" under *Terry v. Ohio*, 392 U.S. 1 (1968), and *Adams v. Williams*, 407 U.S. 143 (1972), even if some of it is regarded as capable of innocent interpretation.

The officers knew that Pringle was a convicted felon and that he was reported by a confidential informant to carry a large automatic pistol all the time and to have been seen with it in his possession earlier in the day. The reliability of the informant was vouched for because he was personally known to the officers, had worked with them over a period of five years, and had provided information that led to the arrest and conviction of narcotics dealers on numerous occasions. The officers went to conduct a search for drug activity and found Pringle sitting outside the suspected location in a parked car. Pringle's eyes widened when he saw the officers, and he hesitated for five seconds when asked whether he had a gun. Thus, the totality of circumstances clearly justified a protective search for the officers' safety.

The judgment of the District Court will be affirmed.

/s/ Walter K. Stapleton
Circuit Judge

5